Good morning, Your Honors. May it please the Court, my name is Dennis Price, and I'm here on behalf of the appellants Gary Shearer and Ron Sarfaty. I'd like to reserve two and a half minutes of my time for rebuttal. I just want to discuss two main points here. The first is that we need to figure out what the extent of due process determines when trying to determine a class action waiver, or rather a class action release is in this case. What is too far? How broad can we interpret it? And second, we have to establish, well, rather reestablish the Deval and Dipper, deliberate and different standards that we don't feel were properly applied at the lower court. So turning to the class action issue, Los Angeles was subject to a very large and frankly very successful class action lawsuit challenging their pedestrian right of way, specifically their sidewalks in the Willits case. We brought our suit because there were aspects that occurred after that suit had already commenced and had barriers that were not included in that suit. Mr. Willits brought his complaint specifically talking about the fact that he was having difficulty getting to public transportation using public rights of way. Now, while I don't know whether or not Mr. Willits actually does drive, we have absolutely nothing to indicate that anyone who is acting as a class representative in the Willits case was a driver. And while there are similarities to Mr. Shearer and Mr. Sarfati, those similarities don't dictate the breadth of the release because we have to look and see if Mr. Willits was actually interested in parking facilities. Counsel, the definition in the settlement agreement of pedestrian facility, which includes the word street, is very broad. Do you agree? Yes, I do believe it's very broad. And I think to the extent that that's being interpreted as barring any sort of action as to parking, it's unconstitutionally broad. Because Mr. Willits wasn't advocating for parking. It's not in his complaint. It's not in the order granting class certification. And to the extent that streets are included in it, it's there with respect to his pedestrian access. Isn't that the breadth of the word street in the settlement? Isn't that supposed to look to the intent of the parties, the contracting parties, to see what they meant by street? And isn't that one of the things that the district court did wrong here under California law was not look at extrinsic evidence to determine what the parties were talking about? We're not talking about street in the abstract. They were talking about something specific. That is definitely our position, Your Honor. We attempted to put that information in front of the judge at the district level, but our request for judicial notice was, frankly, just ignored. A number of documents were brought in that didn't include the documents we were trying to review, but Judge Wilson was not including those in his determination. And had he looked to those documents, you would have seen an awful lot of indicators that the streets were not in contention. You'd see Mr. Willett's statement where he specifies his intent to try and reach public transportation. And anyone who's spent any time in Los Angeles knows there's a gulf of difference between vehicular paths and pedestrian paths. It's a constant fight any time you're going through Los Angeles. It's almost like two separate classes. And they're constantly in competition with each other. What Mr. Sarfati and Mr. Shearer want to do is drive their own vehicles and be able to get to the businesses they wanted to be able to get to with their own vehicles. What Mr. Willett's wanted to do was use the public transportation system. It's two completely competing interests, and it's a competing interest that every single driver in Los Angeles makes every day. But Mr. Willett's wasn't indicating that, and Mr. Willett's wasn't representing that. And to the extent that the re-release is interpreted as including that, it's an unconstitutional application of a class action. Would you explain? I know there was – I don't know if this was in the record or not, but how these – what are they called? Cycle lane – cycle tracks exactly interfere, or how it's alleged they – I mean, this is a motion to dismiss. One might have argued it's premature to dismiss at this point, but – so you might not have gotten this evidence in. But how exactly the cycle tracks interfere with the punitive class in this case's rights? Yes, Your Honor. So it's a couple of ways. The way that the cycle tracks work, it's intended to isolate the bike lane from the main vehicular path. What that does is essentially push back all the on-street parking so that the bicycles will go in front of vehicles rather than in the driveway. So once that's done, it has pushed back the parking and – So it goes sidewalk, bicycle lane, parking, street? Is that how it works? Yes, Your Honor. Not necessarily. It doesn't have to work that way, but here it does work that way. The intent is simply to isolate the bicycle traffic from the vehicular traffic. And what it did in this case was cause them to have to make modifications to the parking, but they didn't do that with any sort of eye towards accessible parking. And as this court in the Fort Union v. City of Alameda case determined, on-street parking is one of the facilities and services that have to be included in any sort of municipality plan. And here they just ignored it. And to the extent that they're trying to consider it, they're saying, well, there's no standards that say what it is to be accessible. So specifically, you're saying that the vans – handicapped vans are built in a particular way and they're designed to come down so there's a ramp to the sidewalk, but since they're moved out, there's no sidewalk for the ramp to come down onto spur easy access or access to the sidewalk. Yes. If you – what we see every day when we go into a regular parking lot, you'd see a striped area where you could deploy a ramp. Here, if you tried to do that, there are things called bollards that would be in the path that separate the parking from the bike path. Those are basically like a pillar that's intended to keep cars from getting to them. You wouldn't be able to do that. There's just simply not enough room. And so there's no way for you to safely deploy those ramps or even safely get out of your vehicles because these spaces are just not designated in the way that accessible parking would typically be designated. And so it's just as simple as that. There is no accessible parking in this area. It's a new construction, so they're held to the highest standard, not just a simple we'll get to it when we get to it. This is brand-new construction that they managed to not do. This is brand-new construction that was done after the city of Alameda case. They knew better, but they chose not to do it. And now they're asking that this previous release, which had a very tightly defined budget, to have that include that this is part of it when they clearly aren't even using that money for that. And now they're trying to claim that it's moot. It doesn't make any sense. And so I think that brings us to the second issue of deliberate indifference. Not only did they know about this and choose not to do it, but our plaintiffs told them about it, and then they were told they weren't going to do it. And in the case of Mr. Scherer, his responses just went completely unresponded entirely. Had we had the opportunity to do discovery on this, we believe we'd be able to show that they didn't even do any sort of risk analysis or any sort of analysis of what would be required to put in this parking. So who's they within the city? For Mr. Sarfati, he spoke with someone who was identified as the ADA coordinator. And this is an individual that in other cases has actually been held to be good enough to show deliberate indifference. It's somebody who has the ability to make these determinations. And he told them, we're not going to do anything. He didn't say why. He didn't say this was done after any sort of analysis. It was just, it's not going to happen. And Mr. Sarfati was left essentially having to come to us because he had lost his ability to get what he needed from the city. And that is beyond the scope of deliberate indifference. But at the trial court level, they made a substantive determination on those facts and said we hadn't pled enough. There was simply nothing else for us to amend then. We had made the pleading standard under Federal Rule 8, and we weren't given the opportunity to prove it. But did, was deliberate indifference adequately alleged here? Because don't they have to allege that they made specific, reasonable, and necessary requests for accommodation? Was that alleged? It was alleged. And at least my interpretation of Judge Wilson's order is he didn't challenge that. He said the second prong was what wasn't met. He said, you know, if we accept that the prong one was met, that there was proper notice, he said there was not proper allegation that they had failed to act. And we think that speaks to itself. I mean, you have someone who has the ability to make that decision saying it's not going to happen, and in the case of Mr. Shears, his responses went completely ignored in that entirely. And I just think that had we had the opportunity to even do even a modicum of discovery, we would have been able to prove that. And the whole point of the Rule 8 requirements is to put the city on notice. That was done. But Judge Wilson had made a determination that we weren't going to be able to prove it, and that simply inappropriated the motion to dismiss stage. He was making subjective determinations on the facts as alleged rather than taking them as true, which is the requirement. There are no other questions. I reserve the rest of my time for rebuttal. Kagan. Martin, Your Honors. May it please the Court, there are a few issues that I think need to be addressed. First and foremost is whether or not the city's on-street parking is a program and service of the city. We've had a lot of discussion about whether or not diagonal parking is included or on-street parking is included, and that is not the issue that's presented for this Court's consideration. The city admits that on-street parking is encompassed within its programs and services. The point is, is that the city What part does the city admit? I can't speak up. Yes, Your Honor. The city has admitted that on-street parking is part of its programs and services, and the issue is one of accessibility to that on-street parking, which brings us to why the significance of the Willet settlement absolutely precludes these claims. As the Court was commenting earlier, before we get there, this is a series of one of a series of copycat lawsuits that came and was filed immediately after the city announced its settlement in the Willet Act. Counsel, there's no question that the district court excluded the evidence that plaintiff offered to try to demonstrate what the intent of the parties was, correct? I don't necessarily agree with that. The court did not exclude it. The court did not make a ruling on the request for judicial notice. The court didn't consider it. We don't know that, Your Honor. There's nothing in the record to indicate that the court considered it. There's nothing one way or the other, Your Honor. That's correct. Are you familiar with Chief Justice Traynor's opinion in Pacific Gas and Electric v. Thomas Strayedge in Rigging where he said rational interpretation of a contract requires at least a preliminary consideration of all credible evidence offered to prove the intention of the parties? Yes, Your Honor. But we go to the issue of the scope of Judge Marshall's order approving the class action settlement. And as the Supreme Court has continually said, the scope of the class action settlement dictates what the scope of the release is. And in this matter, there's no ambiguities in the agreement, so there's no need for extrinsic evidence. Well, but are you familiar with our decision in Trident Center v. Connecticut General Life Insurance Company where Judge Kaczynski, writing for our court, said this case therefore presents the question whether parties in California can ever draft a contract that is proof to parole evidence? Somewhat surprisingly, the answer is no. Even assuming that was considered, it still is not reversible there, Your Honor, because the question becomes one of if the district court was to consider that and was to overrule, assume for argument's sakes, that injunctive relief was ultimately to be ordered on this case, the injunctive relief would absolutely interfere with the 30-year settlement that was embraced by Willits, by the Willits settlement, which is $1.367 billion. And don't look at that, Your Honor. But isn't that a different issue? No, Your Honor, because if you cannot grant relief because the matters are intertwined and because the matters have already been resolved, how does a second court have jurisdiction? How does the issue not moot? Because you can only have accessibility to a certain location once. The scope of the Willits settlement. Exactly, Your Honor. And how do you determine it? And did the district court determine it properly here? And, Your Honor, looking at the Willits settlement, going through, if you look at the excerpts of the record, page 67, it assigns the settlement class. Plaintiffs acknowledge that they are members of that class. Continuing on at page 79, it defines the scope of the release claims, very clearly stating that all prior claims and all claims for accessibility over the pedestrian pathways are settled for the 30-year period. Counsel, here's my problem with your position. If the common law parole evidence rule were applicable here, I think your argument would have a lot of force as to this settlement language being non-ambiguous. But the California Supreme Court has adopted a rule that essentially vitiates the common law parole evidence rule as we have recognized, and the California Supreme Court has said that the courts need to consider as a preliminary matter basically all evidence proffered as to intent and meaning. And in the case that I quoted from Trident Center, we said that under Erie, we are bound to follow that abrogation of the parole evidence rule. So how could the district court here have acted correctly if under California law the district court is absolutely required to look at the evidence proffered by the plaintiff? Your Honor, even had the district court looked at it, it would not have made a difference. The evidence that was proffered essentially was an opinion testimony. The scope of the pleadings were before the court. They were submitted in request for judicial notice. The rulings on the Willett settlement and the settlement agreement, which continuing on, page 66 of the excerpts of record, has a definition of pedestrian facility. When we wrote that definition, we started at one edge of the roadway, actually at the building edge, and we described the sidewalk, the curb, the gutter, the street continuing all the way across to the other side. Because we wanted to assure that when the city implemented the Willett settlement that it was doing so to the maximum extent of accessibility. But did it take into account the cycle tracks? Absolutely, Your Honor. The cycle tracks, there is no standards. Even assuming, for argument's sake, that the cycle tracks were not settled. And point that needed important, the cycle tracks were completed in 2015. The Willett settlement was finalized in 2016. Were they brought at the cycle tracks claim? Is that what you're saying? Absolutely, Your Honor. They were submitted. That's a different argument than they did bring them and they were included. Well, they were waived because they were not submitted as objections to the fairness hearing, Your Honor. Waived? I don't know. A plaintiff, a class plaintiff, as the Federal circuits have stated, there's nowhere in including a settlement that's broader than the claims that are actually pledged. In this matter, parking was expressly referenced in the complaint. It was an issue. But what is the main issue is accessibility to the parking. So, in other words, whether or not a disabled person can park at a specific location is not the fundamental point. The point is, how do they get to their vehicle once they park? And if this case was allowed to proceed, we would have at least two courts then saying what their interpretation of access to a parking space is. The Access Board for the Federal Government has came out and stated explicitly that there is no accessibility requirements for on-street parking. There's no statute. There's no standard. There's no case law that has ever said that on-street parking is specifically required. There's no blue curb requirements. And keep in mind that this is a commercial facility, not a residential. The city has a separate program where they will grant blue curbs in front of residential. But if you were to require a blue curb at a specific commercial facility, if you put it on the northwest corner, well, what happens for that disabled individual that wants to go to the southeast corner store? Are you then requiring them to travel a longer route? Were those issues ever reached by the district court here? The district court simply looked at accessibility. In the Willett settlement, the district court looked at accessibility over the entire public right of ways. But I mean the determination made by the district court here was based on the language in the Willett settlement agreement. It was based upon the ruling from Judge Marshall at the district court level, the objection hearings, and the record in the Willett's case, which confirmed that all of these issues were included, have been heavily litigated, and were included within the $1.367 million settlement, Your Honor. You know, it's odd to me, if you're right, then as a matter of course, the district court, the clerk of the district court would have assigned the Sarafati case to Judge Marshall as a related case, because that's the role in the central district. Your Honor, the clerk actually did look at that, and Judge Marshall rejected them. And the comments that she made, I believe, were that she was on senior status, she was wrapping up Willett's, and that other judges could handle the remaining cases. Right. So she rejected the notion that they were related cases. There was actually several related cases that were deemed related, but were not assigned to her. And in fact, one of those, Your Honor, I would note that Mr. Scheer had actually filed another lawsuit following the Willett settlement on these same issues as well. So we're seeing copycat plaintiffs that are coming forward. I don't know. So that's the question at the core of this, is are they the same issues or not. Right? Yes, Your Honor. Okay. But even the injunctive relief necessarily is intermingled. Turning to the monetary relief claims, Your Honor, that issue was waived. Not only was it waived by not pleading it, but the standards enunciated by this Court, or excuse me, by the district court in Barilou in the published opinion, state that the city has to have specific knowledge of that plaintiff's needs. Not only that plaintiff's needs, but the likelihood of harm. It's not simply I don't like what you're putting in there. And the cycle tracks, Your Honor, are simply moving the bike lane over so it's protected. So you have pedestrian access lane that is protected. There's no evidence or allegations anywhere in the complaint or the record to suggest that it's not in compliance with the EPA. The argument is that it makes street parking inaccessible to people with handicapped vans. I'm sorry, Your Honor. I didn't hear the first part. The argument is that it makes street parking, I mean, in particular on Reseda Avenue, inaccessible and there's no reasonable accommodation for parking handicapped person vans. Your Honor, there are no facts alleged as to why it's inaccessible. There's a reference that it might be in excess of five degrees. But as you know, the applicable statutes provide variances for terrain cannot accommodate it. That process has went through full planning. And furthermore, any accessibility and any modifications over the bike lane, the crosswalks and the pedestrian walkways are being covered by the Willits settlement. So they're necessarily intertwined in that you can only have accessibility addressed once. You can't have two courts having different views on what constitutes accessibility over a pedestrian right-of-way, Your Honor. All right. Thank you, counsel. Thank you, Your Honor. He went a minute over, so you can go a minute over. I'll give you a minute. Thank you, Your Honors. I just want to make a couple of quick points. The first is I want to correct a repeated error that keeps getting made on the record, and that's that parking was considered in the Willits case. The word parking did appear in the complaint. The context matters. It was talking about people parking their vehicles on the apron of driveways. This wasn't access to apron parking. It was complaining about people parking their cars on the sidewalk. So the reason why it was brought up in the context of pedestrian parking is people were parking their vehicles on the pedestrian parkway. That wasn't Mr. Willits looking for parking for himself. It was him trying to get the cars out of the way. And so I take significant issue with the city trying to claim that this is somehow claim preclusive because Mr. Willits was annoyed that cars kept getting in his way. So that moves me on to the interference with the settlement that was brought up. And, you know, I'm sorry if it feels like it's that way, but $1.4 billion is not enough to do this. That's how much they settled it for. And to the extent that this wasn't included in it, well, then it's a due process violation. And that's just the way it is. I mean, we can't undermine the Constitution and the rights of all these plaintiffs who had no notice that any of this was going to be precluded if they didn't have adequate representation. And I don't think there's any way that can be justified to say that Mr. Willits represented the parking interests of disabled drivers in the city of Los Angeles. He never claimed that he did. He never claimed that he drove. And he never made any specific allegations about his wanting to park anywhere. So how could he possibly claim to have been an adequate representative? And I'll go further and just say that he didn't. If you look at his statement as to his status as a class rep that we submitted in our request for judicial notice both to this court and to the lower, you'll see that he didn't make any reference to it at all. And the request for judicial notice, aren't some of the documents you requested that we take judicial notice of already in the record? Some of them perhaps are in the record. The context and the full document rather than an excerpt. So we don't need to take judicial notice of those? This court does not. We submitted that for the purpose of clarity to make sure you had the full document and not knowing exactly what was going to get included in the record from the court below. Ultimately, our request for judicial notice here was to give you all of the information we wanted Judge Wilson to have initially that as far as we could tell was ignored  looked at that information. Thank you, Counsel. Thank you, Your Honors. All right. Sarafati and Scherer v. City of Los Angeles is submitted.
judges: Wardlaw, Cardone, Bennett